**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SWINDELL DRESSLER | ) | |
| INTERNATIONAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 10-1150 |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| TRAVELERS CASUALTY | ) | |
| AND SURETY COMPANY; and | ) | |
| THE TRAVELERS INDEMNITY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

AND NOW, this 31st day of October, 2011, upon consideration of Plaintiff's Motion to Strike Affidavit of Howard E. Fitts and Motion for a Spoliation Inference as a Result of Travelers' Destruction of Relevant Underwriting Documents (Docket No. 36), Defendant the Travelers Indemnity Company's Response to Plaintiff's Motion to Strike Affidavit of Howard E. Fitts (Docket No. 45), Defendant the Travelers Indemnity Company's Response to Plaintiff's Motion for a Spoliation Inference as a Result of Travelers' Destruction of Relevant Underwriting Documents (Docket No. 46), Defendant the Travelers Indemnity Company's Supplemental Response to Plaintiff's Motion for a Spoliation Inference as a Result of Travelers' Destruction of Relevant Underwriting Documents (Docket No. 57), Plaintiff's Reply Brief in Further Support of Its Motions to Strike the Affidavit of Howard E. Fitts and for a Spoliation Inference (Docket No. 59), the June 21, 2011 Oral Argument thereon as well as the transcript of said argument (Docket No. 77), the Court rules as follows.

**I.  Motion to Strike the Affidavit of Howard E. Fitts:**

A.  Overview of Arguments:

As part of a dispute concerning the production of documents, Defendants produced the Affidavit of Howard E. Fitts. (see May 3, 2011 Hearing Memo at Docket No. 28). Said Affidavit provides, in relevant part, that Mr. Fitts is employed as a Second Vice President of Operations and Systems, Document Management Unit and is responsible for maintaining complete and accurate copies of commercial lines policies issued by Defendants. (Docket No. 36-1). Mr. Fitts has been employed by Defendants since 1959 and has had commercial lines document management responsibilities since 1987. *Id.* Mr. Fitts is put forth as an authorized representative for Defendants and given his duties, responsibilities and experience, he is familiar with how Defendants maintain business records, including insurance policies and underwriting documents. *Id.* In his Affidavit, Mr. Fitts affirms that as part of Defendants' document retention program (prior to 2006), Defendants maintained the underlying documents of a policyholder (designated as a National Account) for ten (10) years after completion of the activities referenced in the policyholder's account file. *Id.* Thereafter, Defendants' document retention program called for the destruction of the underwriting documents associated with that National Account policyholder. *Id.*

The Pullman Inc.[1] account was designated as a National Account and said account was closed when the last Travelers policy issued to Pullman, Inc. expired on July 1, 1979. *Id.* Accordingly, Mr. Fitts states that the underwriting documents associated with the policies that

---

[1] Defendants note that under the majority of Defendants' policies, Plaintiff qualified as an additional named insured, after Plaintiff was incorporated by Pullman, Inc., as a wholly-owned subsidiary in July 1973. (Docket No. 46, pg. 2). Defendants' policies were issued to Named Insured, Pullman Inc., throughout the 1970's, commencing on February 5, 1970 with the last policy expiring on July 1, 1979. *Id.*

Defendants issued to Pullman, Inc. were "likely destroyed" between July 1989 and July 1990, as part of Defendants' document retention program. *Id.* Said likely destruction was confirmed by the fact that Defendants were unable to locate any such underwriting documents, after a reasonable and diligent search. *Id.* Mr. Fitts further attests that he has personal knowledge of the facts, matters and statements set forth within his Affidavit and that he signs and affirms under the penalties of perjury that his statements are true and accurate to the best of his knowledge. *Id.*

In light of the content of the Fitts' Affidavit, Plaintiff argues that it is legally insufficient under Rule 56(c)(4)[2] because it is not based upon personal knowledge, does not set out facts that would be admissible in evidence and does not demonstrate that the Affiant is competent to testify on the matters stated therein. (Docket No. 36). In turn, Defendants argue that the Affidavit of Mr. Fitts adheres to the requirements of the Rule. (Docket No. 45, pg. 3). Specifically, Mr. Fitts swore under the penalties of perjury that the statements contained in his Affidavit were true and accurate to the best of his knowledge, which Defendants argue, satisfies the personal knowledge requirement. *Id.* Mr. Fitts has personal knowledge of and is intimately familiar with how Defendants maintain business records, including underwriting documents. *Id.* Further, the statement that the documents were "likely destroyed", does not indicate or constitute a lack of personal knowledge. *Id.* Defendants refer to Affiant Fitts' statements as averments and note that Plaintiff contends that the statements are opinions. (Docket No. 45, pg. 4). Defendants note that "belief" is the requisite knowledge requirement when opinion evidence is at issue. *Id.* Therefore, Defendants assert that if considered opinion testimony, the statements would still be admissible. *Id.*

---

[2] "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

B.      Legal Standard and Discussion:

Following a thorough search of the rules, case law and treatises, the Court has been unable to locate a recognized standard to which an affidavit must adhere, during the discovery phase of a case.[3]  Indeed, there is very little guidance in pertinent case law and legal treatises. On the other hand, there is ample case law concerning the standard to which an affidavit must adhere in Summary Judgment proceedings, in accordance with Federal Rule of Civil Procedure 56(c)(4).[4]  However, Federal Rule of Civil Procedure 34(b) pertaining to the production of documents does not require verification.  This leaves the Court in a quandary concerning the standard to which an affidavit must adhere, during the discovery phase of a case.

The Court notes that Affiant Howard E. Fitts may not only qualify as a fact witness, but may also potentially qualify as a lay opinion witness, pursuant to Federal Rule of Evidence 701, which permits a lay witness, who is not testifying as an expert, to offer testimony in the form of an opinion or inference.  Fed. R.Evid. 701.    In addition, it is possible that the Affidavit of Howard E. Fitts may potentially be used as evidence of Defendants' routine business practice. *See* Fed. R.Evid. 406, 803 and 902.  *See also, e.g.  Envirex, Inc. v. Ecological Recovery Associates, Inc., et al.*, 454 F.Supp. 1329, 1333 (M.D.Pa. 1978) ("Evidence of the routine practice of an organization, whether corroborated or not, is relevant to prove that the conduct of the organization in a particular occasion was in conformity with the routine practice"); AMERICAN JURISPRUDENCE PROOF OF FACTS; SECOND SERIES, 35 POF 2d 589 ¶¶ 1-11 (1983).

Furthermore, Defendants assert that the underwriting documents at issue were destroyed between July 1989 and July 1990, in the normal course of business, pursuant to a legitimate

---

[3] In fact, the parties' counsel inform this Court that as many as thirty depositions need to be taken. (Docket No. 102). Accordingly, Summary Judgment motions have not yet been filed, nor has this case been placed on a trial list.
[4] *See, e.g. Mathews v. Cingular Wireless*,  2011 WL 601372 (D.N.J.  Feb. 16, 2011); *Bibbs v. Township of Kearney*, 2011 WL 765970 (D.N.J. Feb.  25, 2011); *Brokenbaugh v. Exel Logistics North America, Inc.*, 174 Fed.Appx. 39 (3d  Cir. 2006); *Koken v. Lexington Ins. Co*., 2006 WL 5377234 (E.D.Pa. Feb. 1, 2006).

document retention policy. (Docket No. 46, pgs. 4-6). However, the Court has not been provided with a copy of same. Nor has the Plaintiff taken a 30(b)(6) deposition directed to Defendants' document control and retention. To that end, Affiant Fitts may be designated to respond. In that event, the Court notes that "it is unnecessary that the identification witness have personal knowledge of the actual creation of the document. […] The absence or extent of personal knowledge regarding preparation of a business record affects the weight rather than the admissibility of the evidence." *U.S. v. Page*, 544 F.2d 982, 987 (8th Cir. 1976); *see also U.S. v. Ortiz*, 182 F.Supp.2d 443, 451 (E.D.Pa. 2000)(quoting 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.11[11], at 803–62) (noting that the qualified witness must have familiarity with the record-keeping system, but that the "witness need not have personal knowledge of the actual creation of the document")).


      C.     Conclusion:

Given that this case is only in the discovery stage, the Court is of the opinion that Plaintiff's Motion to Strike Affidavit of Howard E. Fitts [36] should be denied, without prejudice. Instead, Plaintiff should proceed to depose Affiant Howard E. Fitts, no later than December 1, 2011, after which time Plaintiff may renew its Motion to Strike Affidavit of Howard E. Fitts, if the record warrants such Motion.

**II.     Motion for a Spoliation Inference as a Result of Travelers' Destruction of Relevant Underwriting Documents:**

A.     Overview of Arguments:

Plaintiff argues that it is entitled to a spoliation inference as a result of Defendants' destruction of relevant underwriting documents. (Docket No. 36 ¶ 8).  Said inference would inform the fact-finder that the missing underwriting documents would have been unfavorable to Defendants, on the issues of: (a) Plaintiff's status as a covered insured under Defendants' policies; (b) Pullman, Inc.'s payment of premiums for coverage for itself and its subsidiaries, including Plaintiff and; (c) the lack of any negotiations or agreements when underwriting Defendants' policies that Plaintiff or other Pullman, Inc. subsidiaries would lose coverage, in the event that ownership of such subsidiaries changed. *Id.*

Plaintiff asserts that all of the requirements for a spoliation inference are met. (Docket No. 36 ¶ 11).  The underwriting documents were destroyed when Defendants were already involved in several major national asbestos coverage lawsuits. *Id.*  Defendants knew or should have known that all of its liability policies, including those at issue in this case, would likely already have been triggered by asbestos exposure of unknown claimants who would file suit against its insureds in the future. *Id.*  Therefore, Defendants had an affirmative duty to preserve all documents related to these policies, including the important underwriting documents. *Id.*

Plaintiff contends that it will be prejudiced by Defendants' destruction of the underwriting documents because: (a) it will be prevented from obtaining relevant evidence, including evidence related to Defendants' claims that Plaintiff is not a covered insured; (b) that even if Plaintiff was a covered insured, it somehow lost coverage when its ownership changed

and; (c) that Illinois law applies, because that is allegedly where the policies were negotiated and/or delivered. (Docket No. 36 ¶ 12). Plaintiff maintains that case law supports the finding of a spoliation inference, not only based upon culpable intent, but also based upon negligent destruction of evidence. (Docket No. 59, pg. 5).

Defendants argue that the underwriting files were destroyed pursuant to Defendants' document retention policy[5], in the normal course of business, as evidenced from the Affidavit of Howard E. Fitts, at Docket No. 36-1.[6] (Docket No. 46, pgs. 1-3). The underwriting files were destroyed before Defendants received notice of potential claims from Plaintiff. *Id.* The underwriting documents were not destroyed with knowledge of pending or impending litigation and were not destroyed with culpable intent. *Id.* Therefore, Defendants contend that a spoliation inference is not warranted. *Id.*

Specifically, Defendants assert that the underwriting documents at issue were destroyed between July 1989 and July 1990, in the normal course of business, pursuant to a legitimate document retention policy. (Docket No. 46, pgs. 4-6). The earliest submission of a potential claim by Plaintiff under Defendants' policies was in 1992, in response to the Edward T. Coffey lawsuit. *Id.* The earliest litigation that potentially involved any issues concerning the availability of insurance coverage, under Defendants' policies, was the New Jersey state court action, filed in January 2004, but which did not include Defendants, until approximately three years later in May, 2007. *Id.* As a result, Defendants did not fail to preserve evidence in pending or reasonably foreseeable litigation. *Id.*

Defendants maintain that case law supports the finding of a spoliation inference, only where there exists culpable intent. (Docket No. 46, pgs. 7-8). Defendants also contend that the

---

[5] The Court has not been provided with a copy of same, as noted <u>infra.</u>
[6] Plaintiff's Motion to Strike Affidavit of Howard E. Fitts, (Docket No. 36), is treated <u>infra.</u>

underwriting documents were not destroyed with culpable intent and that a spoliation inference is not appropriate where destruction was not culpable. *Id.* The actual policies, to which any underwriting would relate, were provided to Plaintiff. *Id.* Because Plaintiff had not tendered any claims or lawsuits to Defendants, at the time the documents were destroyed, Defendants could not have known that Plaintiff would (years later) face asbestos personal injury claims and seek coverage under Defendants' policies.[7] *Id.* Therefore, it is impossible for Defendants to have destroyed the underwriting documents with culpable intent. *Id.*

Defendants also argue that a spoliation inference is not warranted, as the underwriting documents are not relevant. (Docket No. 46, pgs. 8-11). First, Defendants admitted in the Amended Responses to Plaintiff's First Set of Requests for Admission that Plaintiff, after its incorporation by Pullman Inc., as a wholly-owned subsidiary in July 1973, was an insured at the time the policies were issued and during the subsequent policy periods. *Id.* As a result, the underwriting process conducted at the time Defendants' policies were issued has no bearing on

---

[7] As the Court understands, this case involves occurrence policies. An occurrence policy "protects the policyholder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy." *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 (1978). Defendants allegedly destroyed the underwriting documents pursuant to a document retention policy between July 1989 and July 1990. Said document retention policy should have been informed by the current state of the law (during the July 1989-July 1990 time frame) regarding comprehensive general liability policies in general and as they related to asbestos claims. During the period of July 1989 through July 1990, there were three theories of potential liability, including exposure, manifestation and continuous trigger. Defendants maintain that Illinois law applies. Relevant Illinois case law during that time period includes *Zurich Insurance Company et al. v. Raymark Industries, Inc.*, 514 N.E.2d 150 (Ill. 1987) (adopting the exposure and bodily injury trigger of coverage theories); *see also, e.g. UNR Industries, Inc., et al. v. Continental Insurance Company, et al.*, 682 F.Supp. 1434 (N.D.Ill. 1988); *Walgreen Company, et al. v. Liberty Mutual Company*, 1987 WL 27324 (N.D.Ill. Dec. 10, 1987). Plaintiff asserts that because this case has been brought in Pennsylvania, Plaintiff is situated in Pennsylvania, claims have been brought in Pennsylvania, Defendants conduct business in Pennsylvania and because it has not been definitely determined where the policies were issued, Pennsylvania law applies. During the July 1989 through July 1990 time period, Pennsylvania followed *Keene Corporation v. Insurance Company of North America, et al.*, 667 F.2d 1034 (D.C. Cir. 1981)(which adopted a continuous trigger of coverage in the asbestos arena). *See also, e.g. ACandS, Inc. v. Aetna Casualty and Surety Company, et al.*, 764 F.2d 968 (3d Cir. 1985); *Liberty Mutual Insurance Company v. Those Certain Underwriters at Lloyds, et al.*, 650 F.Supp. 1553 (W.D.Pa. 1987); *General Refractories Company, et al. v. Travelers Insurance Company, et al.*, 1988 WL 136317 (E.D.Pa. Dec. 15, 1988). The Court further notes that said document retention policy had to be written to cover all fifty states. Also, it is conceivable that the subject policies may have been called upon to address non-asbestos related claims. Given same, the Court continues to question the rationale behind Defendants' document retention policy.

Plaintiff's status as an insured. *Id.* It was only later when, as a result of a series of corporate transactions in 1986, Defendants' policies were not listed as a transferred asset under the General Assignment of Assets and Assumption of Liabilities between the Signal Companies, Inc. and the Henley Group, Inc. (dated May 22, 1986), does the issue of which corporate entity has the right to coverage under Defendants' policies arise. *Id.* Defendants maintain that this is a legal question that will not be answered in the underwriting documents, which Plaintiff seeks. *Id.*

Second, the 1986 corporate transactions, which Defendants assert caused Plaintiff to lose its ability to access coverage under the Defendants' policies, occurred after the underwriting documents would have been generated or received in the 1970's. *Id.* Therefore, the underwriting documents at issue, will have no relevance to Defendants' reliance on the *United States Filter* decision or its argument that Plaintiff is no longer able to access coverage under Defendants' policies or Plaintiff's defense thereto. *Id.* Third, the underwriting documents at issue are irrelevant to Defendants' choice of law position, because the choice of law is readily discernable from the policies themselves. *Id.* To this end, Defendants assert that the policies were issued to Pullman, Inc. in Chicago, Illinois, with the assistance of insurance brokers, Marsh McLennan and Johnson Higgins, which were also located in Illinois. *Id.* Furthermore, the underwriting documents are not the only source of information regarding choice of law. *Id.* Said information is also likely available from the insurance brokers that dealt with the policies. *Id.*[8] In response, Plaintiff argues that Defendants have been involved in asbestos litigation for decades and that

---

[8] "Fed.R.Civ.P. 34 requires production of a document that is in the 'possession, custody or control' of a party; the fact that the document may also be available from another source is irrelevant." *Sabouri v. Ohio Bureau of Employment Services*, 2000 WL 1620915, *5 (S.D.Ohio Oct. 24, 2000). "With regards to the term 'control,' it has been well established that the test for control is not defined as mere possession, but as the legal right to obtain such documents on demand." *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 8-9 (D.D.C. 2007)(citing *Alexander v. FBI,* 194 F.R.D. 299, 304 (D.D.C. 2000)).

there were claims submitted by other insureds under the Defendants same policies, prior to the

"likely destruction" of the underwriting documents at issue. (Docket No. 59, pg. 5).[9]


        B.        Legal Standard:

"Spoliation is the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation.

*Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd.,* 348 F.Supp.2d 332, 335 (D.N.J. 2004)." *Victor*

*v. Lawler,* 2011 WL 4753527, *1 (M.D.Pa. Oct. 7, 2011) (quoting *Fortune v. Bitner.* No. 01–

111, 2006 WL 839346, * 1 (M.D.Pa. Mar. 29, 2006)).

> [R]elevant authority requires that four (4) factors be satisfied for the rule
> permitting an adverse inference instruction to apply: 1) the evidence in
> question must be within the party's control; 2) it must appear that there has
> been actual suppression or withholding of the evidence; 3) the evidence
> destroyed or withheld was relevant to claims or defenses; and 4) it was
> reasonably foreseeable that the evidence would later be discoverable.
> *Mosaid,* 348 F.Supp.2d at 336 *citing Brewer,* 72 F.3d at 334; *Scott v. IBM*
> *Corp.,* 196 F.R.D. 233, 248–50 (D.N.J.2000); *Veloso v. Western Bedding*
> *Supply Co.,* 281 F.Supp.2d 743, 746 (D.N.J.2003). Additionally, the
> United States District Court for the District of New Jersey recognized:
> "While a litigant is under no duty to keep or retain every document in its
> possession, even in advance of litigation, it is under a duty to preserve
> what it knows, or reasonably should know, will likely be requested in
> reasonably foreseeable litigation." *Mosaid,* 348 F.Supp.2d at 336 (quoting
> *Scott,* 196 F.R.D. at 249).

*Id.* (quoting *Ogin v. Ahmed,* 563 F.Supp.2d 539, 543 (M.D.Pa. 2008)).

Thus, "[a] party which reasonably anticipates litigation has an affirmative duty to

preserve relevant evidence. *Baliotis v. McNeil,* 870 F.Supp. 1285, 1290 (M.D.Pa. 1994). Where

evidence is destroyed, sanctions may be appropriate, including the outright dismissal of claims,

---

[9] The Court also questions whether these comprehensive general liability insurance policies were issued as stand-alone policies, or in conjunction with worker compensation policies. In that event, there may have been asbestos related claims against worker compensation policies. If that is the case, such evidence could be pertinent to a spoliation claim.

the exclusion of countervailing evidence, or a jury instruction on the 'spoliation inference.' This inference permits the jury to assume that 'the destroyed evidence would have been unfavorable to the position of the offending party.' *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 78 (3d Cir.1994)." *Id.* at 2 (quoting *Howell v. Maytag,* 168 F.R.D. 502, 505 (M.D.Pa. 1996)).

District courts within the Third Circuit are split regarding the requisite culpability of a purported spoliator under the "actual suppression" requirement. *N.V.E., Inc. v. Palmeroni*, 2011 WL 4407428, *7 (D.N.J. Sept. 21, 2011). "Some district courts 'have found that an adverse inference arises when spoliation 'was intentional, and indicates fraud and a desire to suppress the truth, and ... not ... where the destruction was a matter of routine with no fraudulent intent.' " *Id.* (quoting *Arteria Property Pty Ltd. v. Universal Funding V.T.O.,* 2008 WL 4513696, *4 (D.N.J. Oct. 1, 2008)). But, some courts merely require proof of intentional conduct. *Id.* (citing *Veloso v. Western Bedding Supply Co.,* 281 F.Supp.2d 743, 746–49 (D.N.J. 2003)). *See also, e.g. Reish v. Pennsylvania State University,* 2011 WL 2015350, *7 (M.D.Pa. May 24, 2011) (Requiring culpable spoliation of evidence with respect to routine document destruction policies); *Hicks v. Wegmans Food Market*, 2011 WL 499368, *2 (D.N.J. Feb. 10, 2011) (The Third Circuit requires intentional destruction with a culpable state of mind, not merely negligent destruction); *Fortune v. Bitner*, 2006 WL 839346, *1 (M.D.Pa. Mar. 29, 2006) ("No adverse inference can be drawn, therefore, from the mere fact of [a party's] inability to produce the records, absent evidence that they were intentionally concealed or destroyed"); *Veloso v. Western Bedding Supply Co.,* 281 F.Supp.2d 743, 746–49 (D.N.J. 2003) (Intentional conduct must be found before giving an adverse inference instruction).

However, other courts have held that the adverse inference is justified where evidence has been negligently destroyed. "If a party has notice that evidence is relevant to an action, and

either proceeds to destroy that evidence or allows it to be destroyed by failing to take reasonable precautions, common sense dictates that the party is more likely to have been threatened by that evidence." *Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd*. 348 F.Supp.2d 332, 338 (D.N.J. 2004); *holding recognized by, Centimark Corp. v. Pegnato & Pegnato Roof Management, Inc.,* 2008 WL 1995305, *10 (W.D.Pa. May 6, 2008); *Paris Business Products, Inc. v. Genisis Technologies, LLC*, 2007 WL 3125184, *3 (D.N.J. Oct. 24, 2007); *AMG Nat'l Trust Bank v. Ries*, 2011 WL 3099629, *5 (E.D.Pa. Jul. 22, 2011); *Scott v. IBM Corp.,* 196 F.R.D. 233, 248 (D.N.J. 2000) (finding that spoliation sanctions might be appropriate where there was nothing to indicate documents were intentionally destroyed).[10]

If it is determined that spoliation of evidence has occurred, the Court must determine an appropriate sanction.

> The United States Court of Appeals for the Third Circuit has applied three (3) key considerations to determine whether a sanction for spoliation of evidence is appropriate. *Schmid,* 13 F.3d at 79. The considerations are: 1) the degree of fault of the party who altered or destroyed the evidence; 2) the degree of prejudice suffered by the opposing party; and 3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Id.* When appropriate, a court may impose any potential sanction including: 1) dismissal of a claim or granting judgment in favor of a prejudiced party; 2) suppression of

---

[10] This Court is mindful of the following guidance. "A party's mere inability to produce copies or versions of materials that existed when the lawsuit began is not necessarily sufficient to establish sanctionable misconduct, provided that the party conducted a diligent search in response to the discovery request and produced the best evidence that it found at the time." *MOORE'S FEDERAL PRACTICE 3D*; Vol. 7, Section 34.16[4], p. 34-106-107 (2011) (citing *Shepherd v. American Broad. Cos., Inc.*, 62 F.3d 1469, 1481 (D.C.Cir. 1995). "No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983), *see also Brewer v. Quaker State Oil Refining Corporation*, 72 F.3d 326, 334 (3d Cir. 1995). Furthermore, at least one respected insurance treatise states that "insurers' alleged policy of destroying expired comprehensive general liability insurance policies was not actionable as fraud, deceit, or bad faith under circumstances where nothing indicated (1) any misrepresentation about the insurers' document retention policy, (2) insureds' reliance on a reasonable understanding that insurers would retain policies, or (3) any damages resulting to the insureds from the insurers' destruction policy." (*COUCH ON INSURANCE 3D*, Section 208:30, p. 208-40 (2005) (citing *Hyde Athletic Industries, Inc. v. Continental Cas. Co.*, 969 F. Supp. 289 (E.D.Pa. 1997)).

evidence; 3) an adverse inference, referred to as the spoliation inference; 4) fines; and 5) attorneys' fees and costs. *Mosaid,* 348 F.Supp.2d at 335.

*Victor v. Lawler,* 2011 WL 4753527, *2 (M.D.Pa. Oct. 7, 2011) (quoting *Ogin,* 563 F.Supp.2d at 545).

C.       Discussion:

In light of the above authority, it appears to this Court that a spoliation sanction in the form of a spoliation inference instruction is essentially an evidentiary ruling. Evidentiary rulings, including rulings regarding whether a spoliation inference is appropriate, rest in the sound discretion of the court. *Victor v. Lawler,* 2011 WL 1884616, *2 (M.D.Pa. May 18, 2011) *(*citing *Ward v. Lamanna,* 334 F. App'x 487, 492 (3d Cir. 2009)). To this end, "the United States Court of Appeals for the Third Circuit has cautioned us that 'pretrial [rulings regarding evidentiary questions] should rarely be granted....'" *Id.* at *4 (quoting *In re Paoli R. Yard PCB Litig.,* 916 F.2d 829, 859 (3d Cir.1990)).

As Defendants assert that the underwriting files were destroyed pursuant to their document retention policy[11], the Court must consider the following factors prior to issuing a spoliation sanction in the form of a spoliation inference instruction.

> First, the Court should determine whether [the] record retention policy is reasonable considering the facts and circumstances surrounding the relevant documents. […] Second, in making this determination, the court may also consider whether lawsuits concerning the complaint or related complaints have been filed, the frequency of such complaints, and the magnitude of the complaints. Finally, the court should determine whether the document retention policy was instituted in bad faith.

*Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104, 1112 (8th Cir. 1988).[12]

---

[11] As previously noted, the Court has not been provided with a copy of said policy.

[12] "In cases where a document retention policy is instituted in order to limit damaging evidence available to potential plaintiffs, it may be proper to give a [spoliation inference instruction]. Similarly, even if the court finds the policy to be reasonable given the nature of the documents subject to the policy, the court may find that under the particular circumstances certain documents should have been retained notwithstanding the policy." *Lewy*, 836 F.2d at 1112.

In order to properly determine if a spoliation inference or sanction is appropriate, the Court requires a complete factual predicate.[13]  The Court notes that this case is still in the discovery phase and therefore the record is incomplete.  Indeed, the parties' counsel inform this Court that as many as thirty depositions need to be taken. (Docket No. 102).  Further, Summary Judgment motions have not been scheduled, let alone filed; the Court has not issued a Pre-Trial Order; no trial date has been set; and the parties have not submitted proposed jury instructions.  As rulings regarding whether a spoliation inference is appropriate, require a substantial factual record, given this Court's discretion, it is proper to defer this issue to a time closer to or at the time of trial, at which time, a complete factual record will exist.


D.      Conclusion:

Accordingly, Plaintiff's Spoliation Motion [36] is denied, without prejudice to Plaintiff renewing its arguments at the trial stage.  Although said Spoliation Motion [36] is denied, without prejudice, as said Motion is premature, the Court determines that it is appropriate to Order Defendants to respond to Plaintiff's Subpoena, filed at Docket No. 59-1, in an effort to begin to develop the facts, which may support Plaintiff's Spoliation Motion [36].

---

[13] Cases which have dealt with the issue of spoliation, rely upon substantial factual records. *See, e.g. Victor v. Lawler,* 2011 WL 1884616  (M.D.Pa. May 18, 2011); *Gumbs v. International Harvester, Inc.*, 718 F.2d 88 (3d Cir. 1983); *Morris v. Union Pacific Railroad*, 373 F.3d 896 (8th Cir. 2004); *Capellupo, et al. v. FMC Corporation*, 126 F.R.D. 545 (D.Minn. 1989); *Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104 (8th Cir. 1988).

**ORDER**

In light of the above, IT IS HEREBY ORDERED that Plaintiff's Motion to Strike Affidavit of Howard E. Fitts [36] is DENIED, without prejudice. IT IS HEREBY FURTHER ORDERED that Affiant Howard E. Fitts shall be deposed no later than December 1, 2011, after which time Plaintiff may renew its Motion to Strike Affidavit of Howard E. Fitts, if the record warrants such Motion.

IT IS FURTHER ORDERED that Plaintiff's Motion for a Spoliation Inference as a Result of Travelers' Destruction of Relevant Underwriting Documents [36] should be deferred to the time of trial and said Motion [36] is DENIED, without prejudice to Plaintiff renewing same.

Finally, IT IS ORDERED that pursuant to Plaintiff's "Attachment A to Subpoena" at Docket No. [59-1], Defendants shall produce the following documents <u>no later</u> than <u>November 14, 2011</u>:

1. All notices, claims and/or tenders of underlying asbestos personal injury suits by any named or covered insured (including, but not limited to SDIC, Pullman, Inc., M.W. Kellogg Company, Swindell-Dressler Company and Wheelabrator-Frye, Inc.) to Defendants under any of the Travelers Policies, prior to 1990.

2. Defendants' document retention program/policies in effect from 1979 to the present, including for National Accounts, and programs/policies/procedures followed for the preservation of documents from 1979 to the present.

3. All notices sent to named or covered insureds under the Defendants' Policies of Defendants' plan to destroy underwriting and/or other policy documents prior to the destruction of such documents.

4. Defendants' earliest involvement with coverage for asbestos litigation, including but not limited to the following cases: *In re Johns-Manville Corp.*, 40 B.R. 219 (S.D.N.Y. 1984); and *Pittsburgh Corning Corp. v. Travelers Indem. Co.*, 1988 WL 5299 (E.D.Pa. Jan. 21, 1988).

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf:    All Counsel of Record